IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROTH GRADING, INC., d/b/a Impact Roller Technology, a Nebraska corporation,<br><br>Plaintiff,<br><br>v.<br><br>STEPHENS MDS, a Georgia Limited Partnership,<br><br>Defendant. | CASE NO. 8:06CV724<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Filing No. 2). Defendant Stephens MDS is a Georgia limited partnership that has its principal place of business in Georgia. Stephens MDS seeks dismissal of this action based on the Court's alleged lack of personal jurisdiction over it, contending that its right to due process will be violated if it is forced to defend itself in this forum.

The Plaintiff, Roth Grading, Inc., which is doing business as Impact Roller Technology (hereafter "IRT"), opposes the motion. IRT is a Nebraska corporation that manufactures and sells a piece of heavy construction equipment called an Impactor. IRT argues that Stephens MDS had sufficient contacts with Nebraska such that Stephens MDS's right to due process would not be violated by making it defend against IRT's breach of contract claim against it in this forum.

For the reasons that follow, I find that Stephens MDS has purposefully availed itself to transacting business in Nebraska, and I hold that this Court has personal jurisdiction over it.

## FACTUAL BACKGROUND[1]

Stephens MDS initiated contact with IRT in late July 2006 through a telephone call to IRT's office in Nebraska. John Stephens, a partner in Stephens MDS, called IRT to inquire about an Impactor, which is a piece of heavy construction equipment that can be used for grading, compacting soils, and breaking concrete. At the time of the inquiry, Stephens MDS was engaged in the construction of a runway at the Hartsfield-Jackson International Airport in Atlanta, Georgia, and Stephens was interested in using the Impactor for breaking concrete slabs at the project site.

Following Stephens's initial contact with IRT, representatives of the two companies engaged in several telephone conversations. During these conversations, Stephens learned about the Impactor, and the companies negotiated the terms of a sale. The companies also negotiated an option in favor of Stephens MDS to purchase a second Impactor at a discounted price. On or about August 25, 2006, Stephens MDS agreed to buy an Impactor from IRT.

Ultimately, IRT partner Scott Roth and John Stephens executed a purchase order pursuant to which IRT would manufacture and sell an Impactor to Stephens MDS in exchange for $129,600, and Stephens MDS was given a six-month option to purchase a second Impactor for $120,000. Filing No. 8, Roth Affidavit at Ex. A. On August 29, 2006, a Stephens MDS employee faxed an unexecuted purchase order to IRT's office, and later,

---

[1] The facts are taken from the parties' indexes of evidence; Filing Nos. 2 and 3, Affidavit of John Stephens; and Filing No. 8. Affidavit of Scott R. Roth, including the purchase order executed by John Stephens, identified as Ex. A.

upon the request of Roth, a copy of the same purchase order that was executed by John Stephens was faxed to IRT's office.

After the executed purchase order was sent to IRT, Stephens called IRT for updates on the manufacturing process and to discuss delivery of the Impactor. Stephens also inquired of Roth about the possibility of purchasing a trailer to use for transporting the Impactor. Upon Stephens's suggestion, Roth delivered the Impactor to Stephens MDS's job-site in Georgia. After Roth delivered the Impactor to Georgia, Stephens MDS rejected the Impactor and refused to pay for it. Roth returned to Nebraska with the Impactor, and IRT commenced this breach of contract action against Stephens MDS.

## ANALYSIS

In order to survive Stephens MDS's motion to dismiss for lack of personal jurisdiction, IRT need only make a prima facie showing of personal jurisdiction over Stephens MDS. *Digi-tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court must view the evidence in the light most favorable to the Plaintiff and must resolve all factual conflicts in its favor. *Romak USA, Inc. v. Rich*, 384 F.3d 979 (8th Cir. 2004).

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute, codified at Neb. Rev. Stat. § 25-536 (Reissue 1995, Cum. Supp. 2006)[2], are

---

[2]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

satisfied, and (2) whether the exercise of jurisdiction over the defendant will violate the Due Process Clause of the Fourteenth Amendment. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996). Because Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, I turn to the constitutional question. *Quality Pork Intern. v. Rupari Food Services, Inc.*, 675 N.W.2d 642, 649 (Neb. 2004). Thus, constitutional limits will dictate whether personal jurisdiction over Stephens is proper.

"Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nonresident

---

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (Reissue 1995, Cum. Supp. 2006).

4

defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Id.*

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Id.* at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983); see also *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). The fourth and fifth factors are of secondary importance and not determinative. *Land-O-Nod,* 708 F.2d at 1340. In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is the third element of the above test -- the relationship between the cause of action and the contacts -- that gives rise to the distinction between specific and general jurisdiction.  Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.  *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied*, 510 U.S. 814 (1993)).  When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Bell Paper Box,* 22 F.3d at 820.  "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.*, 471 U.S. at 474.

There is no dispute that Stephens's contacts with Nebraska are relatively minimal, consisting primarily of telephone contacts and a few facsimile transmissions to Nebraska. The Eighth Circuit has reaffirmed as recently as 2006, that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause," *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) citing *Porter v. Berall,* 293 F.3d 1073, 1075 (8th Cir. 2002).  However, frequent communications, when taken together with some other action directed toward the forum state, may help establish sufficient minimum contacts*. Northwest Airlines, Inc. v. Astraea Aviation Servs. Inc*., 111 F.3d 1386, 1390 (8th Cir. 1997).  The action of executing a purchase order and transmitting it to IRT in Nebraska, with the knowledge that it would be relied upon to manufacture a single piece

6

of construction equipment valued at more than $100,000 is sufficient additional action directed toward the forum state to establish specific jurisdiction.

When I consider the nature and quality of the Stephens MDS's contacts in relation to the cause of action, I conclude that its admittedly minimal contacts are sufficient to support an exercise of personal jurisdiction over it without a violation of its due process rights. When the nature of Stephens's contacts with Nebraska, including initiating the contact with IRT, negotiating for the purchase of the Impactor and an option to purchase a second Impactor, sending an unexecuted and an executed version of the purchase order to IRT's office, inquiring about the possible purchase of a trailer, inducing reliance to manufacture the Impactor in Nebraska, and inducing Roth to deliver the Impactor in Georgia, are considered together, these contacts support a finding that Stephens MDS had sufficient notice that it might be haled into court in Nebraska on disputes related to the transaction involving the Impactor.

In addition, the fourth and fifth *Land-O-Nod* factors support the exercise of personal jurisdiction over Stephens MDS. It is undeniable that Nebraska has a strong interest in providing a forum for its residents to seek redress when they have suffered significant harm as a result of another party's breach of contract, in this case alleged to be in excess of $100,000. Upon review of the evidence, I find nothing to demonstrate that it would be unduly burdensome for Stephens MDS to defend this action in Nebraska.

The Court's conclusion is supported by recent cases dealing with Nebraska's long-arm statute that have emphasized the relationship between the defendant, its contacts with the forum, and the cause of action. In *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001), the Eighth Circuit Court upheld the district court's exercise of personal

jurisdiction over nonresident defendants whose primary contacts with the forum state included the initiation of a business relationship, telephone calls, and facsimile transmissions. The Court found that although the two non-resident defendants never physically entered the forum state, the defendants made fraudulent representations to a Nebraska resident by telephone calls and facsimile transmissions. Based on those contacts, the Eighth Circuit Court held that the nonresident defendants should have anticipated that the brunt of the harm caused by their fraudulent representations would be primarily felt in Nebraska and that they would be haled into court there. The Nebraska Supreme Court recently determined that a Florida corporation's telephone and facsimile contacts to Nebraska, and the Florida corporation's payment of two invoices to a Nebraska corporation, justified the exercise of personal jurisdiction over the Florida corporation even though no representative of the Florida corporation had ever been physically present in Nebraska. *Quality Pork*, 675 N.W.2d at 652.

    The facts presented in this case can be distinguished from recent Eighth Circuit Court opinions in which a district court's refusal to exercise personal jurisdiction over the nonresident defendant was affirmed. *See Johnson v. Woodcock,* 444 F.3d 953 (8th Cir. 2006); *Porter v. Berall,* 293 F.3d 1073, 1076 (8th Cir. 2002); and *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920 (8th Cir. 1995). In *Johnson*, the Eighth Circuit Court emphasized that the nonresident's contacts to the forum state were remote in time and were too random, fortuitous or attenuated to support the assertion of either specific or general jurisdiction. 444 F.3d at 956 (citation omitted). In *Porter v. Berall*, the nonresident defendant, unlike Stephen MDS, did not initiate the business relationship with

8

the resident of the forum state. 293 F.3d at 1075-76. In *Bell Paper Box, Inc. v. Trans Western*, the parties negotiated and contracted through a broker who was located outside the forum state, the nonresident did not initiate the contact, and the negotiations were concluded after the purchase order was executed. 53 F.3d at 921-22. In this case, nonresident Stephens MDS initiated the contact by calling IRT in the forum state, the parties communicated directly with each other, and they continued their contacts by discussing the manufacturing progress and Stephen MDS's interest in purchasing a trailer, even after the purchase order was executed.

## CONCLUSION

For all the reasons stated, I find that Stephens MDS purposefully established minimum contacts with Nebraska, and I conclude that this Court's exercise over it comports with "fair play and substantial justice." The Motion to Dismiss will be denied.

IT IS ORDERED:

1. The Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (Filing No. 2) is denied; and

2. The matter is directed to Magistrate Judge Gossett for the entry of a progression order.

DATED this 20th day of March, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge